UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ISATU VILLE,

    Plaintiff,

    v.

FAMILY RESOURCE HOME CARE,

    Defendant.

CASE NO. C17-606 RSM

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. #35). Plaintiff alleges that she was unlawfully discriminated against on account of her race and national origin and retaliated against, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"). Dkt. #6. Defendant seeks summary judgment on all claims. Neither party has requested oral argument and the Court finds oral argument unnecessary to its resolution of the Motion. The Court, having reviewed the record and for the following reasons, grants Defendant's Motion for Summary Judgment.

ORDER – 1

## II. BACKGROUND

Plaintiff, Isatu Ville, is a naturalized U.S. citizen and identifies her race as "black African" and her national origin as Sierra Leone. Dkt. #52 at 1, 7, 22. Plaintiff has completed nurse training and obtained a Certified Nursing Assistant's license. *Id.* at 13–14. Defendant, Family Resource Home Care, is a home care agency providing in-home care and in-home health-care services. Dkt. #40 at ¶ 2.

On May 26, 2016, Plaintiff was hired by Defendant at will and on a temporary basis (as needed by clients).[1] *Id.*; Dkt. #38-2 at 2. Upon being hired, Plaintiff was provided a document entitled "Information for New Caregivers" and a "Caregiver Handbook." Dkt. #38-2; #38-3. The two page "Information for New Caregivers" specifically advised Plaintiff that "hours, assignments and schedules can change at any time." Dkt. #38-2 at 2. The document also informed Plaintiff that she could be terminated for a variety of reasons, including "carelessness or inattention to client care; failure to perform duties as outlined in the Client Care Plan" and insubordination. *Id.* Plaintiff signed the "Information for New Caregivers" form, subscribing to the statement: "I have read and understand the above [] policies and procedures as stated above. I understand that violation may result in my dismissal." *Id.*

Plaintiff began work the next day. Dkt. #36-1 at 1. She was easily placed due to her desire to provide "live-in care" and ability to assist a client's movements. Dkt. #43-1 at ¶ 5. Defendant uses a "client care supervisor" to assess a client's needs and pair them with an

---

[1] Plaintiff maintains that she was hired "as a full time Living-In Caregiver/Certified Nursing Assistant." Dkt. #52 at 2. But this assertion is clearly contradicted by the "Information for New Caregivers" form, that Plaintiff signed, which indicates: "As [Defendant] is a temporary services agency, hours, assignments and schedules can change at any time." Dkt. #38-2 at 2. Plaintiff also appears to argue that she had a contract that she was discharged from, but does not provide any evidence that a separate contract was ever formed. Dkt. #52 at 2–3 (indicating she was hired "with the contract working with" her first client and that she was "discharged" from the contract).

ORDER – 2

appropriate caregiver. *Id.* at ¶ 2. Defendant's client care supervisor matched Plaintiff with an appropriate client who had a developmentally disabled son also living in the house, was receiving live-in care for the first time, and was a relatively complicated client. *Id.* at ¶ 6–7. Defendant was initially satisfied with Plaintiff's work. *Id.* at ¶ 8. On June 14, 2016, Plaintiff summoned police to the residence, to satisfy her mandatory reporting duty, following an accusation by the client's son and a next door neighbor that her care was abusive. *Id.* at ¶ 8; Dkt. #52 at 9. Defendant's client care supervisor did not feel that this was an appropriate response to the situation. Dkt. #43-1 at ¶ 8. Later that day, the client was taken to the emergency room and was hospitalized overnight. *Id.* at ¶ 9. The next day, June 15, 2016, Plaintiff was informed she would return to work with the client but was then told that the client was not yet released from the hospital. Dkt. #6 at 12. Defendant elected to assign different caregivers following the client's release from the hospital. Dkt. #43-1 at ¶ 10. Plaintiff went by the client's house and met the client and another of Defendant's caregivers. Dkt. #6 at 12.

At the same time, Defendant needed a caregiver to fill-in for a specialized dementia care caregiver from June 18-20, 2016. Dkt. #43-1 at ¶ 11. Plaintiff had some experience with dementia care, obtaining a certificate in "Caregiver Dementia Specialty Training. Dkt. #52 at 12, 27. Defendant offered Plaintiff the work in part because she was the only caregiver available. Dkt. #43-1 at ¶ 11; Dkt. #39 at ¶ 4. However, a caregiver with significant advanced dementia care experience subsequently came available and Defendant decided that she would be a better fit for the client. Dkt. #43-1 at ¶¶ 12–13; Dkt. #39 at ¶ 5. Accordingly, on June 17, 2016, Defendant, through a Caucasian supervisor, notified Plaintiff that she had been removed from the care schedule "[b]ecause the client [] doesn't need help on that weekend." Dkt. #6 at 2–3, Dkt. #39 at ¶ 6; Dkt. #52 at 5. Nevertheless, Plaintiff showed up at the client's house where

ORDER – 3

another Caucasian caregiver was already working. Dkt. #6 at 15. Plaintiff worked for other of Defendant's clients on June 19-21, 2016. Dkt. #36-3 at 2. Plaintiff continued to work for Defendant, including shifts on July 3-5 and 31, 2016, and August 8, 11, 15-17, and 26, 2016. *Id.* at 3–4. After August 26, 2016, Plaintiff stopped requesting shifts and after a month, her status was changed to "inactive." Dkt. #36 at ¶ 18; Dkt. #38-1 at 1.

### III. DISCUSSION

#### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

The non-moving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. Neither will uncorroborated allegations and self-serving testimony create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). Rather, the non-moving party must make a "sufficient showing

on [each] essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

B. **Motion to Strike**

Plaintiff did not timely respond to Defendant's Motion and Defendant has moved to strike the late filed Response. Dkt. #53 at 1–2. Defendant's Motion was noted for the Court's consideration on September 7, 2018. Dkt. #48. Under Local Civil Rule 7(d)(3), Plaintiff's Response was due on September 4, 2018, but was not filed until September 7, 2018. Dkt. #52.

The Court is under no obligation to excuse Plaintiff's failure to comply with the rules[2] and Plaintiff has never sought leave to file a late response nor offered any explanation for her failure to comply with the rules. However, Defendant also does not allege any prejudice and Plaintiff's filing appears largely duplicitous of prior portions of the record. Further, even if the Court struck Plaintiff's Response, summary judgment cannot be granted as a matter of course and the moving party must still satisfy its burden of showing that it is entitled to judgment as a matter of law under Federal Rule of Civil Procedure 56. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Accordingly, the Court has considered Plaintiff's Response and denies Defendant's Motion to Strike.

C. **Summary Judgment is Appropriate on Plaintiff's Title VII Claims**

a. **Discrimination**

Title VII, prohibits discrimination on account of an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Discriminatory disparate treatment occurs

---

[2] "Pro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). While courts are to construe pro pleadings liberally, *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (citations omitted), courts are not obligated to "assist and guide the pro se layman through the trial thicket." *Jacobsen v. Filler*, 790 F.2d 1362, 1365, n. 5 (9th Cir. 1986) (citations omitted).

ORDER – 5

"where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank &* Trust, 487 U.S. 977, 985–986 (1988)). Discrimination cases are often considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must rise an inference of discrimination at which time the burden "shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), *as amended*, 784 F.2d 1407 (1986)). If the defendant succeeds, then to defeat summary judgment, the plaintiff must demonstrate that the "articulated reason is a pretext for unlawful discrimination by 'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Aragon v. Republic Silver State Disposal, Ind.*, 292 F.3d 654, 658–9 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quotation marks and string citation omitted). "Although intermediate burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

A plaintiff can raise an inference of discrimination, a prima facie case, by direct or circumstantial evidence of discrimination or by showing that: (1) she is a member of a protected class, (2) she was qualified for her position, (3) she was subject to an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably.

ORDER – 6

*Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Here, Plaintiff cannot make even a prima facie case of racial discrimination.

Plaintiff's allegations of her race and national origin clearly establish that she is the member of two protected classes. Plaintiff also alleges and supports that she was qualified as she held the necessary licensure, she was performing adequately, her employment with Defendant continued, and her burden at the first stage is "minimal." *See Wallis*, 26 F.3d at 889 (citations omitted). Much less certain, are whether Plaintiff establishes that she suffered an adverse employment action or whether other employees outside her protected classes were treated more favorably.

Plaintiff's primary complaints are that she was removed from providing care for her first client and her employer decided not to have her care for her second client. Adverse employment actions must "materially affect the compensation, terms, conditions, or privileges" of employment. *Chuang*, 225 F.3d at 1126. Plaintiff fails to establish that she was entitled to continue working with her first client as her general allegations cannot overcome the clear evidence that she accepted the position knowing that she was not entitled to work with any one client as Defendant would determine her schedule. Dkt. #38-2 at 2. Further, Plaintiff was quickly rescheduled to work with a second client.[3] When Defendant elected to have a more qualified employee work with the second client, Plaintiff was reassigned again and worked on June 19 and 20, 2015. Dkt. #36-3 at 2. In fact, Defendant assigned Plaintiff periodic work with clients until she elected to stop seeking work. Dkts. #36 at ¶ 18; #36-3 at 3–4. At most, Plaintiff makes vague

---

[3] In her Response, Plaintiff makes several new allegations that appear to advance new theories of liability. See Dkt. #52 (arguing that Defendant retaliated by discharging her "for performing [her] duty as a mandatory reporter," that she was "discharged [] from the contract," "<u>DEMOTED</u> [] from the full time Living-In Position to an On-Call Position," was not earning enough, and that another caregiver was "promoted" to her client). But these arguments do not appear in her Complaint, are not supported by any evidence, are conclusory, and appear baseless.

ORDER – 7

and unsupported allegations that the changing shifts decreased her compensation. But Plaintiff has not provided enough evidence to allow a reasonable jury to determine that Defendant subjected her to an adverse employment action altering the material terms of her employment.

Even if Plaintiff suffered an adequately adverse employment action, Plaintiff has not demonstrated that other caregivers outside of her protected classes were treated more favorably. Her only argument, again without factual support, is that other caregivers ultimately cared for the two clients. But Defendant establishes—with factual evidence—that the caregiver who replaced her in caring for the first client was within Plaintiff's protected racial class. Dkt. #43-1 at ¶ 10. Defendant also establishes—with factual evidence—that although the replacement for the second client was outside of Plaintiff's protected classes, she was more qualified to work with that client. *Id.* at ¶ 12.

Further still, even if Plaintiff could establish a prima facie case, Defendant has demonstrated that it had legitimate business reasons for its actions. Defendant establishes that it elected to reassign Plaintiff following her verbal altercation with the first client's developmentally disabled son who resided with the client. Defendant also establishes that it elected to assign a better qualified provider for her second client and that she subsequently went to the client's house after being instructed not to, in violation of Defendant's policies.

Finally, Plaintiff does nothing to show that a discriminatory motive likely drove Defendant's actions and does nothing to rebut Defendant's articulated legitimate business reasons and establish that they are unworthy of credence. *Burdine*, 450 U.S. at 256 (identifying two methods of showing pretext) Beyond the fact that Plaintiff belongs to two protected classes and suffered employment actions that she considers adverse, Plaintiff has not presented any evidence that the two were in any way related. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610

(1993) ("Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome."). Conversely, Defendant provides two sworn statements estimating that "well over 50% of [its] employees are non-caucasians" and that "approximately 50% of [its] employees originate from a country other than the United States." Dkt. #40 at ¶ 3; Dkt. #38 at ¶ 6.

### b. Retaliation

Under the Title VII, retaliation claims are also considered under the burden shifting of *McDonnell Douglas*. *See Surrell v. Cal. Water Service Co.*, 518 F.3d 1097 (9th Cir. 2008). A plaintiff presents a prima facie case by establishing "(1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action." *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006). Here, Plaintiff cannot establish any of the required elements. Plaintiff points to no protected activity in which she opposed an unlawful employment practice,[4] has failed to establish sufficiently adverse employment actions, and therefore cannot establish a causal link. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (plaintiff's ultimate burden is to show that the adverse employment action would not have occurred but for the protected activity).

## IV. CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS:

---

[4] Plaintiff points only to suffering an adverse employment action after purportedly satisfying her mandatory reporter obligations under Washington State law. Dkt. #52 at 8–9. Even if Defendant took adverse actions against her for satisfying her mandatory reporter obligations, Plaintiff points to no authority indicating that those obligations constitute "protected activity opposing an unlawful employment practice" under Title VII.

ORDER – 9

1) Defendant's Motion for Summary Judgment (Dkt. #35) is GRANTED and all of Plaintiff's claims against Defendant Family Resource Home Care are DISMISSED.

2) The Clerk shall provide a copy of this Order to Plaintiff Isatu Ville, care of Michael Cobbinah, at the following address: 28808 14th Ave. S., Federal Way, Washington 98003.

3) This matter is now CLOSED.

DATED this 6 day of November 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE